IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

PATRICIA E. MADEWELL     PLAINTIFF

v.     Civil No. 09-3046

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration     DEFENDANT

### MEMORANDUM OPINION

**I.**   **Factual and Procedural Background**

Plaintiff, Patricia E. Madewell, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"), pursuant to §§ 216(i) and 223 of Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423(d), and § 1602 of Title XVI, 42 U.S.C. § 1381a, respectively (collectively, "the Act").

Plaintiff filed her DIB and SSI applications on June 4, 2007, alleging an amended disability onset date of May 11, 2007,[1] due to chronic pain syndrome of her chest, knee problems, IBS, acid reflux disease, anxiety, and fluid build-up. (Tr. 12, 105-08, 122). At the hearing, Plaintiff alleged the following additional impairments: psoriasis, depression, borderline intellectual functioning, borderline personality disorder, multiple personality disorder, hypertension, sleep apnea, obesity,

---

[1] Plaintiff previously applied for DIB and SSI on November 1, 2004, alleging disability beginning November 24, 2003. (Tr. 108-09). These claims were denied at the hearing level on May 10, 2007, and the Appeals Council found no basis to review the ALJ's decision. (Tr. 12, 59-72). Plaintiff did not appeal this decision in district court. *See Yeazel v. Apfel*, 148 F.3d 910, 912 (8th Cir. 1998) (failure to appeal a final decision of the Commissioner bars a subsequent application for the same time period); *Rogers v. Chater*, 118 F.3d 600, 601 (8th Cir. 1997); 20 C.F.R. §§ 404.955, 404.957(c)(1), 404.987, 404.988. The ALJ found that because there was a final determination on Plaintiff's prior applications, he would consider an onset date no earlier than May 11, 2007, the day after the date of the previous unfavorable decision. (Tr. 12).

migraines, memory problems and fatigue. (Tr. 28-31, 36,161). At the time of the amended onset date, Plaintiff was forty two years old with a sixth grade education. (Tr. 108). She has past relevant work as a CNA. (Tr. 124).

Plaintiff's applications were denied at the initial and reconsideration levels. (Tr. 89-90, 94-96). At Plaintiff's request, an administrative hearing was held on October 8, 2008. (Tr. 22-58). Plaintiff was present at this hearing and represented by counsel. The ALJ rendered an unfavorable decision on March 16, 2009, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 9-21). Subsequently, the Appeals Council denied Plaintiff's Request for Review on May 11, 2009, thus making the ALJ's decision the final decision of the Commissioner. (Tr. 4-6). Plaintiff now seeks judicial review of that decision.

**II.   Medical History**

Plaintiff submitted a substantial amount of medical records pertaining to her initial alleged onset date of October 4, 2004. However, since the earliest date Plaintiff can be found disabled is May 11, 2007, we will only consider medical evidence related to this time period.

A.   Craig Milam, M.D.

Dr. Milam, Plaintiff's primary care physician, has treated Plaintiff for the past five to six years for various conditions, including complex pain syndrome,[2] migraines, knee pain, GERD, allergic rhinitis, psoriasis, obesity, hypertension, edema of the legs, depression, anxiety, and fibromyalgia. (Tr. 27, 175-94, 260-90).

---

[2] After undergoing a cholecystectomy in 2003, Plaintiff developed chronic pain in her right upper quadrant and right chest. (Tr. 176, 233-59). The cause of her chest pain is undetermined. Dr. Milam suggested possible reflex sympathetic dystrophy (also known as complex regional pain syndrome), while Dr. David Cannon believed Plaintiff's symptoms were consistent with neuralgia or neuropathy of the area. (Tr. 241). Plaintiff has been taking morphine and using a TENS unit for several years to help manage her pain. (Tr. 175, 184).

On August 3, 2007, Dr. Milam saw Plaintiff for left knee pain associated with a degenerative tear of the left medial meniscus diagnosed on December 8, 2006, by Dr. Joseph Ricciardia. (Tr. 176). Dr. Milam noted that Plaintiff was tolerating her knee pain somewhat, but did not have the money or insurance to get an MRI. *Id.* On examination, Plaintiff exhibited left knee tenderness medially at the joint line. *Id.* She was also tender in the posterolateral chest wall and right upper quadrant, which was a consistent complaint due to her chronic chest pain. *Id.* Dr. Milam diagnosed Plaintiff with a torn medial meniscus of the left knee, aggravated by overwork, hypertension, chronic complex pain syndrome, and a history of depression and anxiety. *Id.* At this time, Plaintiff's medications consisted of Nasacort (allergic rhinitis), Nexium (GERD), morphine, Vicodin, Atenolol (hypertension), Carafate, (ulcers), MiraLax, Reglan (GERD), cyclobenzaprine (muscle relaxant), Alprazolam (anxiety), Celexa (depression), potassium, and Lasix (fluid retention). (Tr. 175).

From December 20, 2007, to October 23, 2008, Dr. Milam treated Plaintiff for chronic chest pain, obesity, and severe psoriasis. Dr. Milam started Plaintiff on Phentermine to aid in weight loss, which had marginal success. (Tr. 269-72). For her psoriasis, Plaintiff was treated with Clobetasol, Depo-Medrol, and Decadron. (Tr. 267). On May 29, 2008, at a follow-up appointment, Dr. Milam noted extensive lesions and irritation/inflammation on Plaintiff's right leg and slightly improved lesions on her hands and feet. *Id.* After developing an infection, Plaintiff was given Bactrim and Methotrexate, a chemotherapy drug. (Tr. 266-67). On November 28, 2008, Dr. Milam reported that Plaintiff's feet and hands had virtually cleared up with the aid of Methotrexate. (Tr. 299). At this time, Dr. Milam also noted that he believed Plaintiff "probably does have fibromyalgia." *Id.* He prescribed Toradol and Soma and gave Plaintiff samples of Lyrica. *Id.* At a follow-up appointment on January 6, 2009, Plaintiff reported that Lyrica was helping her. (Tr. 300-01).

B. Physical RFC Assessment

On June 26, 2007, Jerry Mann, a DDS consultant, reviewed Plaintiff's medical history and found her capable of performing light work. (Tr. 221-28). He determined that Plaintiff could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, sit/stand/walk for about six hours in an eight-hour workday, and push/pull an unlimited amount (except as shown for lift/carry). *Id.* Additionally, Mann found no postural, manipulative, visual, communicative, or environmental limitations. *Id.*

C. Dr. Mary J. Sonntag

Plaintiff saw Dr. Mary Sonntag for a mental evaluation on August 29, 2007. (Tr. 196). Plaintiff reported a history of suicide attempts and mental health treatment at Ozark Guidance Center (since 1996). *Id.* At the time of the interview, she was taking Lasix, Vicodin, Reglan, morphine, Nexium, Celexa, potassium, Tenormin, Xanax, Flexeril, and Miralax. *Id.* Plaintiff claimed she could not function without these medications, but experienced memory loss, fatigue, and drowsiness as a result. *Id.* When asked about school, Plaintiff stated she dropped out after completing six years of special education. *Id.* She received her CNA certificate and worked as a CNA from 1997-2005, at which time she stopped working after a patient passed away. (Tr. 197).

Dr. Sonntag noted that Plaintiff had poor hygiene and was "very obese," but showed no indications of pain. *Id.* She was alert and oriented, had a good attitude, and was very cooperative, but was depressed and tearful at times. *Id.* Plaintiff demonstrated a basic level of intellectual reasoning, processing efficiency, attentiveness, and memory functioning. *Id.* On the Wide Range Achievement Test, third revision, Plaintiff performed at an eighth grade reading level, fifth grade math level, and third grade spelling level. (Tr. 199). On the Wechsler Adult Intelligence Scale III,

Plaintiff had a verbal IQ of 86, a performance IQ of 72, and a full-scale IQ of 77, which was within the borderline to low average range of intelligence. (Tr. 198). Dr. Sonntag opined that the discrepancy between Plaintiff's verbal and performance scores could be explained by all the medication she was taking. *Id.* She also noted the possibility of malingering. *Id.*

Dr. Sonntag diagnosed Plaintiff with major depression, moderate, and estimated Plaintiff's Global Assessment of Functioning ("GAF") at 50.³ Dr. Sonntag found that Plaintiff could perform most activities of daily living independently, had no difficulty communicating/interacting in a socially adequate manner, and had no problems communicating effectively. (Tr. 201). However, she determined that Plaintiff's ability to cope with the typical mental/cognitive demands of basic work-like tasks was questionable and her ability to attend/sustain concentration on basic tasks would be poor if on her current medications. *Id.* Furthermore, Dr. Sonntag noted that Plaintiff's medication regime undoubtedly caused problems with concentration, memory, sleeping too much, and confusion. (Tr. 200).

D. Mental RFC Assessment

On October 11, 2007, Brad Williams, a DDS consultant, reviewed Plaintiff's medical records and found that she did not satisfy the criteria for Listing 12.04 (Affective Disorders). (Tr. 203-216). In an accompanying Mental RFC assessment, he determined that Plaintiff had moderate limitations in seven categories, but was not significantly limited in all other areas. (Tr. 217-18). Based on this assessment, Williams found that Plaintiff could perform unskilled work where interpersonal contact is incidental to work performed, e.g., assembly work, the complexity of tasks is learned and

---

³ A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 34 (4th ed., 2000).

performed by rote with few variables and little judgment, and supervision is simple, direct and concrete. (Tr. 219).

### E. St. John's Sleep Disorders Center

At the recommendation of Dr. Milam, Plaintiff had a sleep study performed in November 2007. (Tr. 281-86). Dr. Blake A. Little diagnosed Plaintiff with severe obstructive sleep apnea with a apnea-hypopnea index ("AHI") of 110. (Tr. 283-84). Plaintiff was put on an auto-titrating BiPAP machine and three liters of supplemental oxygen. (Tr. 284). At a follow-up appointment on January 8, 2008, Plaintiff reported that she felt "like a new person at this point and feels a lot better." (Tr. 283). Dr. Little noted that Plaintiff's downloads "looked excellent" and she had an AHI of only two. *Id.* Plaintiff was instructed to continue using the BiPAP and supplemental oxygen, and to follow-up in one year. *Id.*

### F. Ozark Guidance, Inc.

In February 2008, Dr. Milam referred Plaintiff to Ozark Guidance for counseling. (Tr. 255). However, the transcript only contains records from September 5, 2008, to January 9, 2009. (Tr. 303). On October 2, 2008, Plaintiff was evaluated by her clinician, Kelly Olsen. Plaintiff was assessed with depressive disorder, NOS, and given an estimated GAF score of 35.[4] (Tr. 306). Olsen noted that Plaintiff was not a good historian regarding onset and her symptoms could be caused by an underlying physiological disorder. *Id.* She also noted a history of brain trauma due to a physically abusive spouse and previous suicide attempts. *Id.* Olsen suspected that organic brain disorder could be the cause of Plaintiff's depressed mood and severe memory and cognitive difficulties. *Id.* She

---

[4] A GAF score of 31-40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. *Id.*

also noted a prior diagnosis of borderline personality disorder, but determined that Plaintiff was no longer borderline or her current symptoms overshadowed those associated with personality disorder. *Id.* Plaintiff was referred to Club of the Ozarks for further individual therapy, but Plaintiff later stated she could not afford treatment and continued counseling at Ozark Guidance. (Tr. 307, 314).

On October 5, 2008, Plaintiff reported improved mood and functioning, possibly due to an increase in her dosage of Celexa and/or her daughter-in-law moving in with her. (Tr. 313). On October 31, 2008, Plaintiff reported that she was no longer sleeping all day and was in a better mood. (Tr. 311-12). On January 9, 2009, Plaintiff reported continued mood and functional improvements. (Tr. 314). Olsen further noted that Plaintiff was spending fewer days in bed and was better able to engage with loved ones and in activities such as cooking and decorating for the holidays. *Id.* There are no further treatment records from Ozark Guidance.

### III.     Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d

614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

**IV.    Administrative Decision**

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May, 11, 2007. (Tr. 14). At step two, he found that Plaintiff suffered from the following severe impairments: chronic right upper quadrant and right chest pain, degenerative joint disease, mood disorder, and psoriasis. (Tr. 15). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.

*Id.* At step four, the ALJ determined that Plaintiff retained the RFC to occasionally lift/carry ten pounds and frequently less than ten pounds, sit for six hours, stand/walk for two hours, occasionally crawl and climb ladders and scaffolds, and frequently climb stairs and ramps, balance, stoop, kneel, and crouch. (Tr. 16). Mentally, the ALJ found Plaintiff moderately limited in her ability to make judgments on simple work-related decisions, understand, remember, and carry out complex instructions, respond appropriately to usual work situations and routine work changes, and interact appropriately with supervisors. *Id.* Based on this RFC assessment, the ALJ determined that Plaintiff could no longer perform her past relevant work. (Tr. 20). However, he found that given Plaintiff's age, education, work experience, and RFC, she could perform the requirements of representative occupations such as production worker, call out operator, and charge account clerk. *Id.* Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Act, at any point from May 11, 2007, through the date of his decision. (Tr. 21).

**V.      Discussion**

On appeal, Plaintiff contends that the ALJ failed to fully and fairly develop the record concerning her mental impairments. *See* Pl.'s Br. 6-13. We agree.

The ALJ has a duty to fully and fairly develop the record, even if a claimant is represented by counsel. *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). "It is well-settled that the ALJ's duty to fully and fairly develop the record includes the responsibility of ensuring that the record includes evidence addressing the alleged impairments at issue from either a treating or examining physician. *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir.2000). While the Secretary is under no duty to go to inordinate lengths to develop a claimant's case, he must "make an investigation that is not wholly inadequate under the circumstances." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994)

(quoting *Miranda v. Secretary of Health, Educ. & Welfare*, 514 F.2d 996, 998 (1st Cir. 1975)). There is no bright-line test for determining when the Secretary has failed to adequately develop the record; the determination must be made on a case by case basis. *Battles*, 36 F.3d at 45 (quoting *Lashley v. Secretary of Health & Human Serv.,* 708 F.2d 1048, 1052 (6th Cir.1983)).

Here, the ALJ failed to obtain the information necessary to render an informed decision. First, he failed to send Plaintiff for an additional consultative evaluation. At the administrative hearing, the ALJ stated that he would order a "complete psychological exam" because Dr. Sonntag's exam was over a year old, yet there is no evidence that Plaintiff was ever sent for further evaluation. (Tr. 56-57). *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985) (ALJ erred by not ordering a consultative examination when such evaluation was necessary for him to make an informed decision)*; see Scott*, 529 F.3d at 824 (ALJ had obligation to order further evaluation when he determined that claimant's test results were not current).

Additionally, the ALJ failed to develop the evidence within the record. Prior to the administrative hearing, Plaintiff's counsel submitted a "Medical Abstract" dated October 3, 2008. (Tr. 233-59). This abstract provides a detailed treatment history concerning Plaintiff's alleged impairments. According to the abstract, Plaintiff saw Dr. Edwin C. Jones for a psychiatric assessment on July 14, 2008. (Tr. 258). Dr. Jones assessed Plaintiff with major depression and panic with agoraphobia, and estimated Plaintiff's GAF score at 30.[5] (Tr. 258). The actual records from Dr. Jones, however, are not a part of the transcript. Furthermore, it appears that the records from Ozark Guidance are incomplete. (Tr. 255-59). According to the medical abstract, Plaintiff began treatment

---

[5] At the administrative hearing, the vocational expert testified that "any GAF score under 50 would preclude holding down work." (Tr. 55).

at Ozark Guidance on February 15, 2008, yet the transcript only contains records from September 5, 2008, through January 9, 2009.  (Tr. 255-59, 303-14).

Defendant argues that Plaintiff has the ultimate burden to prove disability and present the strongest case possible.  *See Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991); Def.'s Br. 4.  Therefore, any lack of evidence in the record is a result of Plaintiff's error.  Def.'s Br. 5.  While we agree that Plaintiff's counsel should have submitted *all* medical records from the relevant time period (rather than rely on a medical abstract), the "ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 824 (8th Cir. 2008) (quoting *Snead v. Barnhart*, 260 F.3d 834, 838 (8th Cir. 2004)).

Finally, we cannot conclude that the evidence of record supports the ALJ's mental RFC assessment.  Dr. Sonntag found that Plaintiff suffered from major depression, moderate, and had an estimated GAF score of 50.  (Tr. 201).  She stated that Plaintiff's ability to attend and sustain concentration would be diminished due to her medication regime and her ability to complete work-like tasks within an acceptable time-frame was unknown.  *Id.*  She also indicated that it was "questionable" whether Plaintiff had the ability to cope with the typical mental/cognitive demands of basic tasks while on her current medications.  *Id.*  Kelly Olsen, Plaintiff's counselor at Ozark Guidance, initially diagnosed Plaintiff with depressive disorder NOS and gave her a GAF score of 35.  (Tr. 306).  Although she reported slight improvement in Plaintiff's mood later in treatment, we only have a snapshot of the treatment records by which to gauge her total progress.  (Tr. 311-14).  Based on Plaintiff's lengthy history of mental health problems and her extensive list of medications, we find that these records alone do not supply enough information to make a fully informed decision as to Plaintiff's limitations.  Furthermore, the ALJ's RFC determination fails to address the impact

Plaintiff's medications would have on her ability to work. For all these reasons, we find that reversal and remand is warranted.

## VI.     Conclusion

Accordingly, the ALJ's decision denying benefits to Plaintiff is not supported by substantial evidence and should be reversed. This matter should be remanded to the Commissioner for further development of the record. On remand, the ALJ should obtain the treatment records from Dr. Edwin C. Jones. Additionally, he should send Plaintiff for a current psychological examination. Once a proper assessment is completed, the ALJ should also reconsider the impact of Plaintiff's medications on her ability to sustain full-time employment.

ENTERED this 12th day of August 2010.

*/s/ J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF U.S. MAGISTRATE JUDGE